

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JJD:RAT/PGS
F. #2015R00098

*610 Federal Plaza*
*Central Islip, New York 11722*

February 15, 2017

**By Hand and ECF**
The Honorable Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
1040 Federal Plaza
Central Islip, New York 11722

        Re:    United States v. Edwin Acosta-Martinez
                  Criminal Docket No. 12-063 (S-4)(JFB)/15-087 (S-2)(JFB)

Dear Judge Bianco:

      On April 22, 2016, the defendant Edwin Acosta-Martinez, also known as "Scarface," a member of La Mara Salvatrucha, also known as the MS-13, an international criminal organization, pled guilty to Count 18 of the second superseding indictment in 15-CR-087 (JFB), Causing a Death Through the Use of a Firearm, in violation of 18 U.S.C. § 924(j)(1), in connection with the November 2, 2011 murder of Brandon Sotomayor in Baywood, New York. Previously, on June 5, 2014, Acosta-Martinez pled guilty to Counts 50 and 67 of the fourth superseding indictment in 12-CR-063 (JFB), Hobbs Act Robbery Conspiracy and Illegal Use of a Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 1951(a) and 924(c)(1)(A)(iii), respectively. The defendant's two cases have been joined for sentencing.

      According to the Probation Department, the defendant's total offense level, in connection with the Sotomayor murder (Count 18) and robbery conspiracy (Count 50), is 43 and he has a Criminal History Category I, which together yield an advisory sentence of life. Pre-Sentence Investigation Report ("PSR") at ¶ 176. For the reasons set forth below, the government objects to the Probation Department's Guidelines calculation to the extent that it does not credit the defendant with a three-level reduction for acceptance of responsibility, and

does not credit the defendant with a one-level reduction for a global plea agreement.[1] Defense counsel has informed the government that the defense joins in this objection. The government respectfully submits that the defendant should receive these reductions and, thus, his total offense level should be 39 for Counts 18 and 50, which results in an advisory Guidelines range of 262 to 327 months' incarceration. This Guidelines range is consistent with the calculation set forth in the plea agreement, to which the defendant stipulated. Additionally, the defendant faces a 120-month consecutive sentence for Count 67. Id. at ¶ 176. Therefore, the government respectfully submits that the defendant's total effective Guidelines range should be 382 to 447 months.

For the reasons set forth below, the government respectfully submits that, after considering the defendant's advisory Guidelines range and the factors set forth in 18 U.S.C. § 3553(a), in particular the seriousness of these offenses, a cold-blooded, execution-style murder and series of violent armed robberies, the Court should sentence the defendant to 420 months in prison.

I. **Background**

The defendant's arrest and conviction resulted from an investigation by the Federal Bureau of Investigation's Long Island Gang Task Force (the "Task Force") into a series of violent crimes committed by members of the MS-13 street gang (hereinafter, the "MS-13"). PSR at ¶¶ 1-61. The defendant, who is a self-admitted member of the MS-13, and dozens of other MS-13 gang members have been charged and convicted in a series of indictments with a litany of violent crimes, including numerous murders and other violent crimes. As set forth in the PSR, the defendant pled guilty to his participation in the November 2, 2011 murder of Brandon Sotomayor, as well as his participation in a series of armed robberies committed between November 2011 and February 2012. The facts and circumstances of all these crimes are set forth in detail in the PSR and are briefly summarized below.

A. November 2, 2011 Murder of Brandon Sotomayor

On November 2, 2011, the defendant, who belonged to the Huntington Criminales Locos Salvatruchas clique of the MS-13, and Brentwood Locos Salvatruchas member Jerry Reyes, also known as "Problematico," agreed to "put in work" for the MS-13 by killing a rival gang member. PSR at ¶ 55. While the defendant and Reyes were walking in the vicinity of Reilly Street in Baywood, New York, they heard music and saw a car with three people, including a man wearing a red hat, Sotomayor, whom they believed to be a member of the rival Bloods street gang. Id. The defendant, who was armed with the .22 caliber handgun,

---

[1] While the Probation Department does not include a global plea reduction in the Guidelines calculation, it does note that the defendant satisfied the conditions set forth in the plea agreement to qualify for such reduction. PSR at ¶ 191.

and Reyes, who was armed with the 9mm handgun, approached the vehicle and fired numerous shots at Sotomayor, striking him multiple times in the neck and torso. Id. When officers from the Suffolk County Police Department ("SCPD") responded to the scene, they found Sotomayor dead in the car. Id.

### B. Armed Robbery Conspiracy

As set forth in the PSR, the defendant and other members and associates of the MS-13 committed a series of armed robberies in Nassau and Suffolk Counties between November 2011 and February 2012. PSR at ¶¶ 9-47. Specifically, the defendant participated in the following armed robberies: the November 20, 2011 armed robbery of Café Testarossa (his former employer), the December 30, 2011 armed robbery of Libreria Christiana Genesis Bookstore, the January 4, 2012 armed robbery of the Lempa Deli, the January 6, 2012 armed robbery of Off the Track Quick Mart, the January 11, 2012 armed robbery of Iglesia Universal, the January 26, 2012 armed robbery of Chapi Deli, the February 12, 2012 armed robbery of Mi Tierrita Restaurant, and the February 28, 2012 armed robbery of the Health-Mart Pharmacy. Id. In each of these robberies, the defendant brandished a handgun and during almost all of the robberies the employee victims and others were tied up or otherwise restrained by the defendant and his co-conspirators. Id. Further, in both the Café Testarossa and Mi Tierrita robberies, the defendant pistol-whipped female employees to try to force them to open safes at those locations. Id. at ¶¶ 10 and 16. Moreover, in the Mi Tierrita robbery, the defendant sexually assaulted two female employees[2] and fired a shot when he was fleeing the restaurant. Id. at ¶ 16.

On February 28, 2012, the defendant and several co-conspirators were arrested in Brentwood by SCPD officers shortly after the Health-Mart Pharmacy robbery. PSR at ¶ 18. Subsequent search warrants executed by the SCPD recovered United States currency, the Health-Mart's stolen surveillance system, disguises and several firearms used by the defendant and his co-conspirators during the robberies. Initially, the defendant and his co-conspirators were charged with the robberies in Suffolk County Court, but the case was later transferred to federal court. On June 5, 2014, the defendant pled guilty to a Hobbs Act robbery conspiracy, which included the eight aforementioned armed robberies, and a related firearms charge. Thereafter, the government developed evidence that the defendant participated in the

---

[2] The defendant's February 23, 2015 sentencing memorandum states that the defendant "denies any sexual contact or attempt at sexual contact with any victim of any of the robberies," and he requests an evidentiary hearing if the Court is going to consider such conduct. Def. Mem. at 2. The government has spoken with the assault victims and, while it is clear that the two victims were sexually assaulted during the course of the Mi Tierrita robbery, the victims do not want to testify at a Fatico hearing regarding the perpetrator. Accordingly, the government is not asking the Court to rely on the fact that this defendant committed the sexual assaults at sentencing.

Sotomayor murder and the grand jury returned a separate indictment charging him with that offense. On April 22, 2016, the defendant pled guilty to using a firearm to kill Sotomayor.

## II. The Defendant's Total Offense Level for the Sotomayor Murder and Robbery Conspiracy Should be 39.

As set forth above, the PSR does not credit the defendant with a three-level reduction for acceptance of responsibility because he obstructed justice in connection with the prosecution of the robbery conspiracy. PSR at ¶¶ 30, 62-63. Specifically, the defendant filed an affidavit wherein he made false statements regarding the facts and circumstances surrounding his arrest and interview by the SCPD. Id. While, as set forth above, the defendant did obstruct justice in connection with the robbery prosecution, and deserves that enhancement in his Guidelines calculation for those robberies, see PSR at ¶¶ 65-125, he did not obstruct the murder prosecution and pled guilty sufficiently in advance of trial. In the initial plea agreement, the government agreed to recommend that the defendant should receive a reduction for acceptance of responsibility because, notwithstanding the obstruction of justice and related enhancement, he pled guilty and saved the Court and the government from conducting a six-eight-week trial in June-July 2014 on the robbery charges. Moreover, after being indicted by a separate grand jury for the Sotomayor murder, the defendant did not engage in any additional obstruction of justice and pled guilty, pursuant to a superseding plea agreement, again saving the Court and the government from conducting a second lengthy trial in May-July 2016. Accordingly, in light of the particular facts of this case, the government respectfully submits that the Court should exercise its discretion and give the defendant a three-level reduction for acceptance of responsibility, despite the obstruction enhancement. See U.S.S.G. Section 3E1.1, Application Notes 4-5.

Additionally, the PSR does not include an additional, one-level reduction of the defendant's offense level for a global plea, as contemplated by the superseding plea agreement. See Plea Agreement at ¶¶ 2 and 7. However, the PSR and the Probation Department's sentencing recommendation both acknowledge that the conditions outlined in the plea agreement for that reduction to apply have been satisfied. PSR at ¶ 191; Revised Sentencing Recommendation. The government submits that the defendant satisfied the conditions set forth in the superseding plea agreement and he should receive the additional reduction for the global point.

Accordingly, the government respectfully submits that the defendant's total offense level for Counts 18 and 50 should be 39, which, in conjunction with Criminal History Category I, yield an advisory Guidelines sentence of 262-327 months. When the mandatory, consecutive sentence of 120-months for Count 67 is factored in, the defendant's total advisory Guidelines range should be 382-447 months.

4

**III.     The Defendant Should Be Sentenced to 420 Months in Prison**

For the reasons set forth below, the government respectfully submits that the defendant should be sentenced to 420 months in prison.

A.     Legal Standard

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines were no longer mandatory, but should be considered in conjunction with the factors outlined in § 3553(a). Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but <u>Booker</u> allows the court to "tailor the sentence in light of other statutory concerns[.]" <u>Kimbrough v. United States</u>, 552 U.S. 85, 101 (2007) (citing <u>Booker</u> at 245-46 and <u>Gall v. United States</u>, 552 U.S. 38, 46-49 (2007)). However, the Supreme Court explained that even though the Guidelines are now advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence. <u>Kimbrough</u> at 108 (citing <u>Gall</u> at 50 and <u>Rita v. United States</u>, 168 L. Ed. 203, 213 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). <u>Id</u>. That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and
>
> (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §§ 3553(a)(1) and (2).

B.     Analysis

Here, pursuant to the recent decisions of the Supreme Court, the Court's "starting point and the initial benchmark" should be the advisory Guidelines range of 382-447 months. <u>Kimbrough</u> at 108 (citing <u>Gall</u> at 50 and <u>Rita v. United States</u>, 168 L. Ed. 203, 213 (2007)).

As an initial matter, with respect to § 3553(a)(1), it is undisputed that the defendant pled guilty to three extremely serious offenses, the murder of Brandon Sotomayor, a series of armed robberies, and discharging a firearm during one of those armed robberies. The serious nature of the defendant's conduct weighs heavily in favor of a Guidelines sentence. While all murders are serious, the Sotomayor murder was particularly callous and cold-blooded because he was a complete stranger to the defendant and Reyes. Despite that fact, the defendant and Reyes approached the victim, who was sitting in a car, and shot him numerous times at close range because they, incorrectly, assumed him to be a rival gang member based on the color of his skin, the neighborhood he was in, and the fact that he was wearing a red hat, which they associated with the Bloods.

The seriousness of the defendant's conduct is further increased in light of his conduct following the Sotomayor murder, which demonstrated his utter lack of remorse. Specifically, less than a month later, after being fired from his job at Café Testarossa, the defendant and another co-conspirator robbed the restaurant at gun-point. The defendant pistol-whipped a female employee to coerce her into opening the safe, but she was unable to do so; likely because she was so afraid. Thereafter, the defendant and other MS-13 members carried out a string of additional armed robberies in Suffolk County, victimizing delis, restaurants, a religious bookstore, and even a church. During each of these robberies, the defendant brandished a firearm and, in one case, he discharged a round while fleeing the robbery location.

Likewise, the government respectfully submits that the history and characteristics of this defendant warrant a 420-month sentence. Although the defendant has no prior criminal convictions, in light of the fact that he committed a murder and eight armed robberies, this factor should be given little or no weight. Moreover, as set forth above, after carrying out the Sotomayor murder, the defendant reaffirmed his membership in the MS-13 by continuing to associate with the gang and participating in the series of armed robberies with other MS-13 members. Additionally, after the murder, the defendant has added multiple MS-13 tattoos demonstrating his continued membership in and allegiance to the MS-13.

Further, in a February 23, 2015 sentencing memorandum ("Def. Mem.") the defendant claimed that his personal history, in particular his age, difficult upbringing in Honduras and adjustment to life in the United States, supports a sentencing reduction. Def. Mem. at 2. However, the defendant's difficult upbringing in Honduras was not unique and does not distinguish him from countless other Honduran immigrants, who come to the United States, legally or otherwise, but do not join the MS-13 street gang and do not commit murders, armed robberies, and other violent crimes. Rather than taking advantage of the educational and employment opportunities in the United States, the defendant joined the MS-13, committed brutal acts of violence, and continued his membership while incarcerated.

Thus, the "nature and circumstances of the offenses" and the "history and characteristics" of the defendant both strongly warrant a sentence of 420 months in prison, pursuant to § 3553(a)(1).

The Court must also consider the factors set forth in § 3553(a)(2)(A)-(C), which provide that a sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). These factors also weigh heavily in favor of a Guidelines sentence.

First, with respect to factor § 3553(a)(2)(A), for the reasons set forth above, the execution-style murder of Brandon Sotomayor and the numerous armed robberies of businesses and a church are extremely serious offenses and need to be adjudicated in a manner that will promote respect for the law and provide just punishment for the offenses. These offenses are more serious because they were committed in furtherance of the MS-13 racketeering enterprise by the defendant and other MS-13 members.

Second, in regard to factor § 3553(a)(2)(B), affording adequate deterrence to criminal conduct, Long Island has been plagued by gang violence over the past several years; especially violence perpetrated by members of the MS-13. In a series of indictments since 2010, which have been assigned to Your Honor, MS-13 members and associates have been charged and convicted in connection with more than 30 murders in the Eastern District of New York. A sentence of 420 months in prison would send a strong message that violent conduct such as that engaged in by the defendant and his fellow MS-13 gang members will not be tolerated.

Third, pursuant to § 3553(a)(2)(C), it is essential that the Court's sentence "protect the public from further crimes of the defendant." As set forth above, the defendant joined the MS-13 in 2011, killed Sotomayor in November and committed a series of vicious armed robberies between November 2011 and February 2012. Moreover, since his February 2012 arrest, the defendant has continued his membership in the MS-13 and added MS-13 tattoos, which makes him a greater risk of being a recidivist and committing additional violent crimes in the future.

### IV.   Conclusion

The defendant pled guilty to participating in a cold-blooded execution-style murder and eight armed robberies, all of which were committed in furtherance of his membership in the MS-13. Accordingly, the government respectfully submits that the Court should sentence the defendant to 420 months in prison.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:   _____
      John J. Durham
      Raymond A. Tierney
      Paul G. Scotti
      Assistant U.S. Attorneys
      (631) 715-7851/7849/7836

cc:   Peter Brill, Esq. (By ECF and email)
      USPO Steven S. Guttman (By email)